UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LE MACARON, LLC,
and JEAN F. RIGOLLET,

    Plaintiffs,

v.                                                      CASE NO. 8:16-CV-918-17TGW

LE MACARON DEVELOPMENT LLC,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Le Macaron Development LLC's Motion to Dismiss (Dkt. 12), to which Plaintiffs have responded in opposition (Dkt. 21). Upon consideration, the motion to dismiss is granted in part and denied in part, as set forth more specifically below.

## BACKGROUND

Defendant Le Macaron Development LLC ("Defendant") franchises pastry shops, which feature a variety of signature macarons and other French pastries. (Dkt. 6-1 at 5). Defendant entered into a franchise agreement with Plaintiff Le Macaron, LLC ("Franchisee"), which is owned by Plaintiff Jean F. Rigollet ("Rigollet"). Plaintiffs' franchise venture eventually failed, and Plaintiffs now assert various state-law claims against Defendant. The claims primarily center on Defendant's purported misrepresentations before the parties entered into the franchise agreement, as well as Defendant's alleged failure to perform under the franchise documents. The relevant facts follow.

On August 13, 2014, Franchisee entered into a "Franchise Agreement" for a store

in Henderson, Nevada. (Dkt. 1 at ¶ 27; Dkts. 6-1 & 6-2). The Franchise Agreement contained a guaranty executed by Rigollet and his business partner at the time, Max Joly. (Dkt. 1 at ¶ 29; Dkt. 6-2 at 5-7). Joly also executed a promissory note on behalf of Franchisee in the amount of $200,000, which was payable to Defendant. (Dkt. 1 at ¶ 206; Dkt. 6-9 at 1-4). On September 9, 2015, Franchisee opened a second store in Las Vegas, Nevada. (Dkt. 1 at ¶ 28).

Before executing the Franchise Agreement, Rigollet had meetings with Defendant's owners, Bernard and Rosalie Guillem. (Id. at ¶¶ 30-31, 37-39). Bernard Guillem falsely stated that he was a doctor in France. (Id. at ¶¶ 32-33). The Guillems informed Rigollet that "he would make huge profits," that "his costs would be lower than with other franchisors," and "that the amount of rent that a store would have was not an issue because Rigollet would sell enough macarons to make a substantial profit." (Id. at ¶¶ 40-42). When Rigollet asked the Guillems how much he would make, they told him to visit Defendant's franchise in Boca Raton, Florida, as that store would have similar types of customers to the ones Rigollet would have in Las Vegas. (Id. at ¶¶ 43-44). The Guillems told Rigollet that he would make the same profits as the franchisee in Boca Raton. (Id. at ¶ 46).

The Boca Raton franchisee told Rigollet that he would make a profit of $50,000 per month. (Id. at ¶ 45). The franchisee also told Rigollet that "his business was so good that he was going to open another location," although he did not open a second location. (Id. at ¶¶ 47-48). Plaintiffs allege that Defendant paid the franchisee $5,000 to provide this information. (Id. at ¶¶ 49-53). Rigollet relied on his discussions with the Guillems and the Boca Raton franchisee in making his decision to purchase a franchise. (Id. at ¶ 60).

Before a prospective franchisee enters into a franchise relationship, the Federal Trade Commission ("FTC") requires a franchisor to provide specific disclosures in a written offering circular or prospectus. (Id. at ¶ 10). The prospectus is known as the Franchise Disclosure Document ("FDD"). (Id.). Defendant's FDD stated that the initial expenses incurred by a franchisee would not exceed $205,100, per store. (Id. at ¶ 67). Franchisee's expenses for the Henderson and Las Vegas stores exceeded $1.1 million. (Id. at ¶ 68). The FDD also did not include certain required information about Bernard Guillem. (Id. at ¶ 70).

Twelve days after Franchisee executed the Franchise Agreement, Defendant revised its FDD. (Id. at ¶ 73). The corrected FDD stated that Bernard Guillem was a principal officer in a number of companies that had previously filed for bankruptcy. (Id. at ¶¶ 74-75). Although the corrected FDD was available on August 25, 2014, Defendant did not provide it until January 2015. (Id. at ¶¶ 81, 83). According to Plaintiffs, had they timely received the corrected FDD, they would have insisted on canceling the Franchise Agreement. (Id. at ¶ 81).

The FDD also did not disclose information about the Guillems' daughter, Audrey Saba-Guillem, and her husband, Didier Saba. (Id. at ¶¶ 84-94). Didier Saba was the cook in charge of manufacturing the macarons and claimed that he was a former employee of Lenotre in France. (Id. at ¶¶ 175-176). In fact, Saba was not a former employee of Lenotre, he had no professional background as a pastry chef, and he did not possess a diploma in cooking or pastry. (Id. at ¶¶ 177, 179-80). Instead, Saba attended a few training sessions to learn how to make macarons. (Id. at ¶ 178).

Defendant required Franchisee to purchase all macarons from Defendant. (Id. at

¶ 109). Of the macarons that Franchisee purchased, 51,000 arrived broken, in a small size, in an unsalable condition, and were poor quality. (Id. at ¶ 110). Some of the macaroons were too large, were undercooked, had too much moisture inside, had an improper meringue look, were not shiny or smooth, or had an irregular filling. (Id. at ¶¶ 111-125). The labels on the macarons boxes did not comply with Nevada labeling requirements. (Id. at ¶¶ 133-135). Defendant failed to timely supply holiday-themed macarons, which caused Franchisee to lose sales. (Id. at ¶¶ 136-148).

In addition to problems with the macarons, Plaintiffs claim that Defendant approved the location and leases for both stores, despite the fact that the lease terms made it impossible for the stores to earn a profit. (Id. at ¶¶ 95-105, 214). Plaintiffs further allege that Defendant failed to provide grand opening assistance, advertising assistance, and marketing assistance as required under the Franchise Agreement and the FDD. (Id. at ¶¶ 149, 152-55, 158-63). Defendant did not place information concerning the Las Vegas store on its website, greatly reducing Franchisee's sales. (Id. at ¶¶ 150-151, 161-162). Defendant also failed to provide certain consultations, approvals, and training as required by the FDD, including inventory management and quality control training. (Id. at ¶¶ 156–157, 164-174).

Plaintiffs' stores lost money every month that they were opened. (Id. at ¶¶ 106-107). Plaintiffs attempted to have someone take over the stores, but they were unsuccessful because it was impossible for anyone to make a profit selling Defendant's products under the conditions and leases approved by Defendant. (Id. at ¶¶ 212-215). After the franchises failed, Rigollet's partner, Joly, sued Plaintiffs in Nevada state court. (Id. at ¶¶ 209-210; Dkt. 6-10). Plaintiffs allege that Defendant is responsible for all monies that

might have to be paid to Joly. (Dkt. 1 at ¶ 211).

Invoking this Court's diversity jurisdiction, Plaintiffs filed the instant action on April 18, 2016, alleging claims for fraudulent inducement (Count I), violation of Florida's Deceptive and Unfair Trade Practices Act (Count II), violation of the Florida Franchise Act (Count III), breach of contract (Count IV), breach of the covenant of good faith and fair dealing (Count V), and tortious interference with a business relationship (Count VI). In response, Defendant filed several counterclaims (Dkt. 14) and the instant motion to dismiss.

For the reasons explained below, the Court finds that the majority of Plaintiffs' claims fail to state a cause of action, in large part due to Plaintiffs' vague and conclusory allegations. Plaintiffs are granted leave to amend and to provide a more definite statement of their claims. As discussed at the conclusion of this Order, the Court also requires Plaintiffs to correct the deficient allegations regarding the parties' citizenship, in order to effectively invoke diversity jurisdiction.

## STANDARD

A complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. The factual allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Although a court must accept as true all factual allegations, that rule does not extend to legal conclusions. Iqbal, 556 U.S. at 678. Thus, a complaint that relies on "labels and conclusions or a formulaic recitation of the elements of a cause of action" is not sufficient to state a claim for relief. Id. (internal quotation marks omitted). Only when a complaint includes well-pleaded factual allegations will a court assume the veracity of those facts and determine whether the facts give rise to a plausible claim. Id. at 679.

## DISCUSSION

### Fraudulent inducement

In Count I, Plaintiffs allege a claim for fraudulent inducement, which requires: (1) a false statement or omission concerning a material fact, (2) the maker's knowledge that the statement is false, (3) an intention that the representation induce reliance, and (4) injury to the party relying on the representation. Wadlington v. Cont'l Med. Servs., Inc., 907 So. 2d 631, 632 (Fla. 4th DCA 2005); Ward v. Atl. Sec. Bank, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001). Plaintiffs allege that Defendant and its agents: (1) falsely represented that they were experts in the business, (2) falsely represented that Didier Saba was a macarons expert, (3) falsely represented the costs to purchase the stores, to set up the stores, and to operate the stores, (4) falsely represented the expected profitability of the franchise, and (5) omitted required information from the FDD concerning Bernard Guillem, Didier Saba, and Audrey Guillem-Saba. (Dkt. 1 at ¶¶ 221-29).

Defendant argues that the fraud claim is barred as a matter of law, based on a non-reliance clause in Section 16.2.3 of the Franchise Agreement and a merger clause in Section 18.1 of the Franchise Agreement, which state in relevant part:

> 16.2.3. Except for representations contained in [Defendant's] franchise disclosure document provided to you in conjunction with this franchise offering, you represent that neither [Defendant] nor its agents or representations [*sic*] have made any representations, and you have not relied on representations made by [Defendant] or its agents or representatives, concerning actual or potential Gross Sales, expenses or profit[.]
>
> 18.1. <u>Entire Agreement</u>. This Agreement and any other agreements executed by the parties concurrently with the parties' execution of this Agreement represent the entire fully integrated agreement between the parties and supersede all other negotiations, agreements, representations, and covenants, oral or written. Notwithstanding the foregoing, nothing in this Agreement shall disclaim or require you to waive reliance on any representation that [Defendant] made in the franchise disclosure document (including its exhibits and amendments)[.]

(Dkt. 6-2 at 13-14). In addition to these provisions, Defendant cites several other clauses in the Franchise Agreement and in the attached "Franchise Questionnaire," which essentially state that Plaintiffs understood the risks of the franchise and received and reviewed franchise documents. (<u>See</u> Dkt. 12 at 10-11).

Florida courts have adopted differing views on the impact of merger, non-reliance, and similar clauses on a claim for fraudulent inducement. See <u>Billington v. Ginn-La Pine Island, Ltd., LLLP</u>, 192 So. 3d 77 (Fla. 5th DCA 2016) (surveying law and certifying questions to the Florida Supreme Court); <u>Adrianne Roggenbuck Trust v. Dev. Res. Grp., LLC</u>, 505 F. App'x 857, 861 (11th Cir. 2013) (acknowledging an evident split of authority among Florida's District Courts of Appeal on the effect of merger clauses). The majority of federal courts appear to hold that merger and non-reliance clauses may prevent a plaintiff from establishing that element of reliance, assuming that the contractual language is sufficiently express, specific, and unambiguous with respect to the representation at issue. <u>Adios Aviation, LLC v. El Holdings I, LLC</u>, No. 15-61218-CIV, 2015 WL 12564317, at *7 (S.D. Fla. Sept. 29, 2015); <u>Creative Am. Educ., LLC v. Learning Experience Sys.</u>,

LLC, No. 9:14-CV-80900, 2015 WL 2218847, at *7 (S.D. Fla. May 11, 2015) ("Ultimately, the issue before the Court is one of specificity."); G Barrett LLC v. Ginn Co., No. 5:09-CV-374, 2011 WL 6752551, at *5 (M.D. Fla. Dec. 13, 2011). Even among these courts, however, opinions differ as to how specific the contractual language must be in order to effectively negate reliance. Compare Creative Am. Educ., LLC, 2015 WL 2218847, at *5-7 (holding that representations concerning the defendant's experience and expertise were disclaimed by a combination of more general provisions), with Adios Aviation, LLC, 2015 WL 12564317, at *5-7 (holding that representations concerning an aircraft's damage history were not sufficiently addressed by a fairly specific disclaimer and merger clause).

Even if this Court applied the majority view in this case, there are two problems with Defendant's argument. First, Plaintiffs correctly point out that the merger clause and non-reliance clause quoted above expressly exclude from their reach representations made in the FDD. (Dkt. 6-2 at 13-14). Thus, the Court is not inclined to hold that Plaintiffs' fraud claim is barred to the extent that it is based on representations in the FDD.[1]

Second, it is not clear that each of the representations at issue is "specifically" contradicted as Defendant contends. For instance, the fraudulent inducement claim is based, in part, on Didier Saba's purported macarons expertise. (Dkt. 1 at ¶ 222). Yet, none of the clauses identified by Defendant addresses Saba's expertise with such specificity so as to render the claim implausible on its face. See Adios Aviation, LLC, 2015 WL 12564317, at *7.

---

[1] Defendant cursorily argues that violations of the FDD are not actionable as fraud, but Defendant's only cited authority, R.T. Vanderbilt Co. v. Occupational Safety & Health Review Comm'n, 708 F.2d 570, 574 (11th Cir. 1983), does not support that proposition.

A closer analysis of this issue is hampered by Plaintiffs' style of pleading. Count I incorporates 209 paragraphs of background facts. (Dkt. 1 at ¶ 219). While Plaintiffs attempt to avoid having the Complaint labeled a shotgun pleading by using subject headings to divide the background facts, Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1324-25 (11th Cir. 2015), it is not clear which facts are intended to relate to the fraud claim. Compounding the problem, Count I identifies certain instances of fraud, suggesting that the claim may be limited to those particular allegations. For instance, Count I alleges that Didier Saba misrepresented his expertise with macarons, but it does not mention Defendant's expertise in locating stores and structuring rent. (E.g., id. at ¶ 97). Similarly, Count I specifically references omissions from the FDD, but it does not mention any alleged misrepresentations in the FDD. (E.g., id. at ¶¶ 67, 154-55). It is also not clear whether Plaintiffs are basing the fraud claim on statements from Defendant's website, and if so, whether Rigollet was aware of those statements. (See id. at ¶¶ 14-26).

Accordingly, the Court sua sponte orders a more definite statement of Count I, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. Weiland, 792 F.3d at 1321 n.10. Plaintiffs shall either include all necessary facts within Count I, or Plaintiffs shall selectively incorporate specific paragraph numbers by reference.

Defendant's motion to dismiss Count I is denied without prejudice. Defendant may re-assert its arguments regarding the effect of the contractual provisions in a subsequent motion, although the Court encourages the parties to address the issues raised in Billington v. Ginn-La Pine Island, Ltd., LLLP, 192 So. 3d 77 (Fla. 5th DCA 2016). To the extent that Plaintiff disputes what appears to be the majority view of federal courts, Plaintiffs are encouraged to cite case law dealing with contractual provisions similar to the provisions at issue in this case.

## FDUTPA

In Count II, Plaintiffs allege a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Plaintiffs allege that Defendant engaged in unfair and deceptive practices by: (1) "providing the false information stated herein," and (2) violating the FTC's franchise disclosure rules by failing to make the necessary disclosures in the FDD about Bernard Guillem, Didier Saba, and Audrey Guillem-Saba. (Dkt. 1 at ¶¶ 236-246).

With respect to Plaintiffs' first allegation that Defendant provided "false information stated herein," the claim is impermissibly vague and must be re-pleaded for the reasons discussed above. Defendant may then re-assert its arguments regarding the effect of the merger and non-reliance clauses.

With respect to the violation of the FTC's franchise rule, Plaintiffs adequately state a claim. Pursuant to Fla. Stat. § 501.203, a per se violation of FDUTPA is established by the violation of any rule promulgated pursuant to the Federal Trade Commission Act, and by the violation of any statute, rule, or regulation proscribing unfair or deceptive practices. Fla. Stat. § 501.203(3)(a), (c). Courts routinely hold that a violation of the FTC's franchise disclosure rule alleges a plausible per se violation of FDUTPA. E.g., KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008); Beaver v. Inkmart, LLC, No. 12-60028, 2012 WL 3822264, at *3-4 (S.D. Fla. Sept. 4, 2012). The Complaint in this case plausibly allege a violation of the FTC's rule, and it also plausibly alleges that the violation caused damage. (E.g., Dkt. 1 at ¶¶ 69, 71-72, 79-83, 89, 94, 206, 215); KC Leisure, Inc., 972 So. 2d at 1073.

Notwithstanding these allegations, Defendant argues that Plaintiffs' claim is implausible because Plaintiffs purchased a second store after receiving a corrected FDD, and because Rigollet bought out his business partner, Joly, after receiving the corrected FDD. (Dkt. 12 at 16-18). Defendant further argues that if Plaintiffs were willing to purchase the second store knowing about the information in the corrected FDD, this fact undercuts their contention that they relied on the original FDD when purchasing the first store.

The Court finds that Defendant's arguments are not appropriate for consideration on a Rule 12(b)(6) motion, as they require inferences in favor of Defendant, credibility determinations, and consideration of evidence outside the pleadings. (E.g., Dkt. 12-1); Hetrick v. Ideal Image Dev. Corp., 758 F. Supp. 2d 1220, 1230 (M.D. Fla. 2010). Defendant may re-assert its arguments after the parties develop record evidence on key issues, including Plaintiffs' reasons for purchasing both stores. For instance, the evidence may demonstrate that Plaintiffs purchased a second store because they were already in the franchise system–in effect doubling down on their investment—and that the decision to buy out Joly was spurred by a desire to simplify operations, as Plaintiffs presently argue. (Dkt. 21 at 14).

Accordingly, the motion to dismiss Count II is denied, to the extent that the claim is based on omissions from the FDD. However, Plaintiffs will be required to provide a more definite statement of the FDUTPA claim to the extent that it is based on unspecified "fraud." (Dkt. 1 at ¶ 236).

### Florida Franchise Act

In Count III, Plaintiffs assert a violation of the Florida Franchise Act ("FFA"), which prohibits certain misrepresentations and omissions during the sale of a franchise or a

distributorship. Fla. Stat. § 817.416(2)(a). In particular, it is unlawful to:

> 1. Intentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship;
>
> 2. Intentionally to misrepresent, by failure to disclose or otherwise, the known required total investment for such franchise or distributorship; or
>
> 3. Intentionally to misrepresent or fail to disclose efforts to sell or establish more franchises or distributorships than is reasonable to expect the market or market area for the particular franchise or distributorship to sustain.

Id. The FFA establishes a civil cause of action and provides for recovery of all money invested in the franchise. Fla. Stat. § 817.416(3).

In a wholly conclusory fashion, Plaintiffs allege that Defendant "violated § 817.416(2)(a)(1) and § 817.(2)(a)(2)." (Dkt. 1 at ¶¶ 250-251). Again, similar to Counts I and II, Plaintiffs incorporate 209 paragraphs of background allegations—despite the fact that the FFA covers only certain well-defined misrepresentations and omissions. The Court therefore holds that Plaintiffs must provide a more definite statement of this claim.

The Court acknowledges Defendant's argument that the FFA claim, like the fraud and FDUTPA claims, is barred by the merger and non-reliance clauses in the Franchise Agreement. Although there is federal case law to support this position, Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 332 F. App'x 565, 567 (11th Cir. 2009), there is a dearth of Florida state-court decisions adopting this view, or even more generally holding that the FFA requires any type of reasonable or justifiable reliance. See Travelodge Int'l, Inc. v. E. Inns, Inc., 382 So. 2d 789, 791 (Fla. 1st DCA 1980) (requiring only detrimental reliance); cf. Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 76 (Fla. 3d DCA 1997) (without analysis, holding that various claims, including an FFA claim, were barred by the terms of the contract). At least one court has expressed doubt about whether

reasonable reliance is required under the FFA, and thus, whether a non-reliance clause is effective to bar an FFA claim as a matter of law. See Randall v. Lady of Am. Franchise Corp., 532 F. Supp. 2d 1071, 1085-87, 1093-94 (D. Minn. 2007) (also discussing whether reasonable or justifiable reliance is required under the Minnesota Franchise Act). The parties are invited to more thoroughly address this issue in future filings.

The motion to dismiss Count III is denied without prejudice. Count III is instead dismissed, sua sponte, with leave to provide a more definite statement.

### Breach of contract

In Count IV, Plaintiffs allege that Defendant breached various provisions of both the FDD and the Franchise Agreement. (Dkt. 1 at ¶¶ 258-276). Under Florida law, a claim for breach of contract requires: "(1) a valid contract, (2) a material breach, and (3) damages." Ferguson Enters., Inc. v. Astro Air Conditioning & Heating, Inc., 137 So. 3d 613, 615 (Fla. 2d DCA 2014). Defendant argues that the FDD is not a valid contract and that Plaintiffs fail to plausibly allege a breach of the Franchise Agreement.

With respect to Defendant's first argument, the FDD expressly states that "[t]he terms of your contract will govern your franchise relationship." (Dkt. 12 at 19; Dkt. 6-4 at 1). In their response in opposition, Plaintiffs identify no legal theory that would support a contract claim based on the FDD, and they include no relevant allegations within Count IV. (Dkt. 21 at 17-18). Accordingly, Count IV is dismissed without prejudice, to the extent that Plaintiffs allege breaches of the FDD.

Plaintiffs also allege that Defendant breached a number of provisions in the Franchise Agreement. First, Plaintiffs allege that Defendant failed to provide timely macarons shipments, failed to provide macarons of a suitable quality, failed to properly

13

label the macarons boxes, and failed to provide the required gift boxes. (Dkt 1 at ¶¶ 262-271). Defendant argues that this claim fails because the macarons were purchased from Defendant's designated supplier, Le Macaron Confectionary, LLC, and Defendant was not a party to that contract.

In response, Plaintiffs cite Section 6.6.1 of the Franchise Agreement, which states that Plaintiffs shall purchase various items, including "food products and ingredients," from designated suppliers, and that Defendant "may receive money or other benefits" from those suppliers. (Dkt. 6-1 at 13). Based on these provisions, Plaintiffs assert that Defendant can be held liable for the quality and delivery of the macarons. (Dkt. 21 at 18). Again, however, Plaintiffs identify no legal theory in support of their position, and they fail to include any allegations in the Complaint setting forth such a theory. The breach of contract claim is therefore dismissed without prejudice, to the extent that it relates to the macarons' delivery, labeling, packaging, and quality.

In Count IV, Plaintiffs further allege that Defendant: (1) failed to provide grand opening assistance under Section 5 of the Franchise Agreement, (2) failed to place information concerning the Las Vegas store on its website, and (3) failed to provide marketing and advertising assistance under Section 9 of the Franchise Agreement. The Court finds that Plaintiffs state a plausible claim based on the first two alleged breaches, which are covered by Section 5.2.1 and Section 9.9 of the Franchise Agreement. (Dkt. 1 at ¶¶ 150, 154-55, 272-73; Dkt. 6-1 at 10; Dkt. 6-2 at 3). The motion to dismiss this portion of the claim is denied. However, Plaintiffs' remaining allegation, that Defendant breached Section 9 of the Franchise Agreement, is impermissibly vague. Section 9 contains nine subsections covering distinct aspects of franchise advertising and marketing. (Dkt. 6-2 at

1-3). Absent some further detail, the Complaint fails to give Defendant fair notice of the alleged breach.

Based on the foregoing, Defendant's motion to dismiss is denied in part as to the alleged breaches of Section 5.2.1 and Section 9.9 of the Franchise Agreement. The motion is otherwise granted, with leave to amend.

### Breach of implied covenant of good faith and fair dealing

In Count V, Plaintiffs allege a claim for breach of the implied covenant of good faith and fair dealing. In particular, Plaintiffs allege that it was Defendant's responsibility to find a competent macarons supplier, that it failed to do so, and that Defendant would not permit Plaintiffs to rectify the problem. (Dkt. 1 at ¶¶ 296-315). Plaintiffs also allege that Defendant failed to enable Plaintiffs to have a proper grand opening, failed to properly market Plaintiff's stores, failed to properly advertise Plaintiffs' stores, and failed to provide proper assistance. (Id. at ¶¶ 316-21).

In Florida, every contract contains an implied covenant of good faith and fair dealing, which is "designed to protect the parties' reasonable contractual expectations." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005); Sepe v. City of Safety Harbor, 761 So. 2d 1182, 1183-84 (Fla. 2d DCA 2000) (discussing application of the U.C.C.). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." Centurion Air Cargo, Inc., 420 F.3d at 1151. The implied covenant has been described as "a gap-filling default rule," which "is usually raised when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards." Publix Super Mkts., Inc. v. Wilder Corp.

of Del., 876 So. 2d 652, 654 (Fla. 2d DCA 2004). "Thus, where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999).

Within Count V, Plaintiffs fail to tie their claim to the performance of any specific contractual obligation, let alone explain how the implied covenant applies to the performance of that obligation. Count V is dismissed with leave to amend. If Plaintiffs amend this claim, they are directed to eliminate the numerous conclusory legal allegations (Dkt. 1 at ¶¶ 281-295), and to include the necessary factual allegations.

### Tortious interference

In Count VI, Plaintiffs allege that Defendant unjustifiably and intentionally interfered with Plaintiffs' business relationship with Max Joly, ultimately causing the franchises to fail and directly causing Joly to file a lawsuit against Plaintiffs in Nevada state court. (Dkt. 1 at ¶¶ 327-335).

A claim for tortious interference with a business relationship requires: (1) the existence of a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the relationship, (3) the defendant's intentional and unjustified interference with the relationship, and (4) damages as a result of the defendant's interference. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994). Defendant argues that Plaintiffs fail to allege the second and third elements. The Court agrees.

Once again, Plaintiffs' claim is impermissibly vague—the alleged interference is

described as "fraud, breaches of contract, and the other actions and inactions." (Dkt. 1 at ¶ 329). If this were the only problem, the Court would order a more definite statement. However, Defendant argues that it was not a stranger to the business relationship between Plaintiffs and Joly, as required to sustain a tortious interference claim under Florida law. Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1294 (11th Cir. 2001); Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. 4th DCA 1999). Instead, Defendant is alleged to have been a party to the franchise relationship. (Dkt. 1 at ¶¶ 27-28). Plaintiffs make no effort to address this argument in their response. (Dkt. 21 at 19-20).

The motion to dismiss Count VI is therefore granted. Although the claim will be dismissed without prejudice, Plaintiffs may amend only if a tortious interference claim can be stated in compliance with Rule 11(b) of the Federal Rules of Civil Procedure. If Plaintiffs choose to amend, they must include all necessary facts within Count VI, or selectively incorporate specific paragraph numbers by reference.

### Diversity allegations

In addition to the deficiencies outlined above, the Complaint fails to adequately allege the citizenship of the parties, sufficient to invoke this Court's diversity jurisdiction. For diversity purposes, a limited liability company "is a citizen of any state of which a member of the company is a citizen." Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1305 (11th Cir. 2011). The Complaint fails to allege the identity and citizenship of each of the members of Plaintiff Le Macaron, LLC and Defendant Le Macaron Development LLC. (Dkt. 1 at ¶¶ 4-5). The negative allegations of citizenship do not suffice. D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661

F.3d 124, 125-26 (1st Cir. 2011); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) ("a party must list the citizenships of all the members of the limited liability company").

The Complaint also fails to adequately allege the citizenship of Plaintiff Jean F. Rigollet. An individual is a citizen of any state in which he is "domiciled." Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974) ("A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent'"); McCormick v. Aderholt, 293 F.3d 1254, 1257-58 (11th Cir. 2002). Merely alleging Rigollet's "citizenship" or "residence" is not sufficient.[2] Mas, 489 F.2d at 1399; Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330 (11th Cir. 2011) (addressing alienage jurisdiction and the implications of dual citizenship); 28 U.S.C. § 1332(a)(2)-(3) (addressing the effect of aliens on both sides of the litigation).

As the party invoking this Court's jurisdiction, it is Plaintiffs' burden to demonstrate that the parties are, in fact, diverse. McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir.2002). Accordingly, the Amended Complaint shall include all necessary allegations regarding the parties' citizenship.

## CONCLUSION

Upon consideration, it is **ORDERED** that Defendant's Motion to Dismiss (Dkt. 12) is **GRANTED IN PART** and **DENIED IN PART**, as set forth more specifically above. Plaintiffs shall file an Amended Complaint, in compliance with the terms of this Order,

---

[2] While Defendant's counterclaim contains a more thorough set of allegations regarding the LLCs' citizenship, it does not allege the domicile of Rigollet or the domicile of the individual members of the LLCs. (Dkt. 14 at ¶¶ 1-3).

within 14 days of the date of this Order.

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this 24th day of October, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of record